**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE MIRAMONTES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>FORD MOTOR COMPANY, INC., and DOES 1 to 10,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.*<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ernie Miramontes ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Ford Motor Company, Inc., ("Defendant" or "FORD"), upon information and belief, except as to his own actions, the investigation of his counsel, and facts that are a matter of public record. The term "Vehicle" shall refer to the 2016 Ford Focus vehicle purchased and owned by Plaintiff, VIN WF0DP3TH8G4114635. Plaintiff alleges as follows:

**INTRODUCTION**

1.     This class action arises out of FORD's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as "high-cost emissions warranty parts" under California's emission warranty requirements and covered under the emissions warranty for 7-years and 70,000 miles.

2.     Instead, in order to minimize FORD's warranty exposure, FORD has unilaterally limited the parts that should be covered under the emissions warranty for 7-years and 70,000 miles, including the parts specifically identified by Plaintiff.

3.     By not comprehensively identifying the parts that should be included as "high-cost" warranty parts, FORD is able to limit the warranty coverage for those parts, thus saving money.

4.     By this action, Plaintiff seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-years and 70,000-mile emissions warranty and an injunction to compel FORD to properly identify parts as high-priced warranty parts.

**BACKGROUND**

5.     For decades, FORD has been in the business of importing and distributing FORD vehicles in the State of California, with the intent to sell FORD vehicles to consumers in California. As such, the FORD vehicles have been subject to state and federal regulations regarding both emissions standards and regarding FORD's obligations to provide consumers with warranties relating to emissions parts.

///

6.      Specifically, dating back over 20 years, California Code of Regulations, Title 13, Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required FORD to identify to the California Air Resources Board ("CARB") all vehicle parts that are "high-priced" "warranted parts," and has required FORD to provide a 7-year 70,000-mile warranty to California consumers relating to all "high-priced" "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty."

7.      The CCR very clearly defines the methodology that FORD is required to use in order to identify which parts should be covered as emissions parts. Furthermore, the CCR very clearly defines the methodology that FORD is required to use in order to identify which parts should be covered by the 7-year 70,000-mile warranty.

8.      Pursuant CCR Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as, "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

9.      Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)      Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)      Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years

1        or 50,000 miles, whichever first occurs; and

2     (3)    Free from defects in materials and workmanship which cause the failure of a

3         warranted part described in section (c) below for seven years or 70,000 miles,

4         whichever first occurs."

5     10.    California Code of Regulations Section 2037(c) deals with "high-priced

6  warranted parts" under the California Emission Control System Warranty and states:

7     (1)    Each manufacturer shall identify in its application for certification the "high-

8         priced" warranted parts which are:

9         (a)    For 1990 through 2007 model year vehicles: [i] included on the Board's

10            "Emissions Warranty Parts List" as last amended February 22, 1985,

11            incorporated herein by reference, and; [ii] have an individual replacement

12            cost at the time of certification exceeding the cost limit defined in section

13            (c)(3);

14         (b)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a

15            warranted part in section (b)(2) above, and; [ii] have an individual

16            replacement cost at the time of certification exceeding the cost limit

17            defined in section (c)(3).

18     (2)    The replacement cost shall be the retail cost to a vehicle owner and include the

19         cost of the part, labor, and standard diagnosis. The costs shall be those of the

20         highest-cost metropolitan area of California.

21     (3)    The cost limit shall be calculated using the following equation:

22         Cost limit {n)} = $300 x (CPI{n-2}]/ 118.3

23         Cost limit {n) is the cost limit for the applicable model year of the vehicle

24         rounded to the nearest ten dollars.

25     11.    In summary, any part that either effects a vehicle's emissions, or causes a

26  vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

27  determining coverage under CCR, considered a "warranted part." If a part is a "warranted part,"

28  the part shall have a 3-year 50,000-mile warranty.

12.     However, if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

**FORD'S CONDUCT**

13.     At all times herein relevant, for each new motor vehicle intended to be distributed by FORD in the State of California, at the time of distribution, FORD has purported to accurately notify CARB of the parts which should be covered as emissions related parts, also known as warranted parts. Furthermore, at all times herein relevant, for each new motor vehicle intended to be distributed by FORD in the State of California, at the time of distribution, FORD has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California emissions warranty.

14.     At all times herein relevant, for each new vehicle intended to be distributed by FORD in the State of California, at the time of distribution, FORD has purported to provide accurate written warranty documents with the vehicle, which purport to accurately identify all of the vehicle parts that are covered under the 3-year 50,000- mile California emissions warranty, as well as the 7-year 70,000-mile California emissions warranty.

15.     FORD has engaged in a systematic business practice of omitting from the FORD warranty booklet provided to owners and lessees at the time of sale or lease, and in resources provided by FORD to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as emissions related warranty parts covered under the 3-year 50,000-mile warranty, and the "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty. FORD classifies *some* of the parts as being covered by the 3-year 50,000-mile California emissions warranty, and *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty, but not all of the parts that should be covered either by the 3-year 50,000-mile California emissions warranty, or the 7-year 70,000-mile California emissions warranty.

16.     Thereafter, when FORD vehicles are presented by consumers to FORD authorized repair facilities for repair, FORD fails to provide coverage under the 3-year 50,000-mile California emissions warranty or the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under said emissions warranties.

17.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by FORD.

18.     FORD engages in the alleged misconduct in order to reduce the amount of money that FORD has to pay out on warranty-related repairs and warranty claims.

19.     If FORD properly identified all of the warranted parts and high-priced warranted parts that should be correctly identified as such, then FORD dealerships would properly provide coverage for said high-priced parts under warranty.

20.     The failure by FORD to properly identify parts as warranted parts and "high-priced" warranted parts under the CCR violates California Business and Professions Code section 17200, *et seq*. (the "UCL") and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"), and is intended to minimize the amount of money that FORD has to pay out in warranty claims.

21.     Plaintiff and other consumers have suffered damage and lost money or property as a result of FORD's wrongful conduct.

22.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that FORD submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for FORD's inaccuracy. FORD alone is responsible for selecting and identifying to CARB the parts that FORD has unilaterally identified as warranted parts and "high-cost emissions warranty parts" as part of its application for vehicle certification. That list may be correct as far as it goes or as far as CARB may know. But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

**JURISDICTION AND VENUE**

23.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state

different from that of FORD; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) FORD is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

24.     This Court has personal jurisdiction over FORD because FORD has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

25.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because FORD conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

26.     All of the wrongful acts complained of by Plaintiff occurred in the state of California, county of Los Angeles.

## PARTIES

27.     Plaintiff Ernie Miramontes ("Miramontes") is an individual.

28.     FORD was and is, upon information and belief, a California corporation, doing business in California.

29.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

30.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of FORD at all relevant times.

31.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint

1  to set forth the true names and capacities of said Defendants, along with the appropriate

2  charging allegations, when the same have been ascertained, as may be necessary. Each

3  reference in this Complaint to "FORD" or "Defendant" is also a reference to all Defendants

4  sued as Does 1 through 10.

5        32.    Plaintiff reserves the right to expand, limit, modify, or amend these allegations

6  at any time, based upon, inter alia, changing circumstances and/or new facts obtained during

7  discovery.

8  **PLAINTIFF'S FACTS**

9        33.    Plaintiff paid for repairs to the VEHICLE which should have been covered

10  under the high-priced emissions warranty. As a result, Plaintiff has suffered damage.

11        34.    On information and belief, FORD's failure to provide proper coverage was an

12  intentional omission by FORD designed to limit FORD's warranty exposure and part of

13  FORD's scheme to fail to properly and comprehensively identify all of the parts that should be

14  identified as high-priced warranted parts and covered for 7-years or 70,000 miles under the

15  California emissions warranty.

16        35.    The details of how FORD actually applied the CCR formula are exclusively

17  within FORD's possession. Similarly, the information regarding what other parts satisfied the

18  CCR requirements but were not identified by FORD as emissions warranty parts and high-

19  priced emissions warranty parts also are in the exclusive possession of FORD.

20        36.    When FORD vehicles are presented to FORD dealerships for repairs of defects

21  which should be covered under the 7-year 70,000-mile California emissions warranty but are

22  not identified by FORD's warranty booklets as being covered, FORD refuses to provide

23  coverage under the emissions warranty. Plaintiff presented the VEHICLE to a FORD

24  authorized repair facility for repairs prior to the end of the 7-year 70,000-mile California

25  emissions warranty period for high-priced emissions parts. Plaintiff was wrongfully denied

26  warranty coverage.

27        37.    The reason that Plaintiff was charged for said repairs was not the result of an

28  individual issue relating to a FORD Dealership, or an oversight by a FORD Dealership in

failing to identify the repairs as repairs that should have been covered under the California emissions warranty, or specifically the 7-year 70,000-mile California emissions warranty. Rather, Plaintiff was charged for said repairs because of FORD's uniform and systematic business practice of intentionally refusing to identify in the FORD warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced warranted parts under California law in order to limit the amount of warranty claims paid by FORD.

38.    CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires FORD to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

39.    FORD intentionally failed to identify all said components in order to reduce the amount of money that FORD spends on warranty-related repairs. If FORD complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then FORD dealerships would properly provide warranty coverage for said high-priced warranted parts.

40.    FORD's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, et seq. (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, et seq.

41.    Plaintiff and other members of the Class have suffered damage as a result of FORD's wrongful conduct.

**REPAIRS AT 28,451 MILES**

42.    On July 26, 2021, at 28,451 miles, Plaintiff presented the Vehicle to Norm Reeves Superstore ("Norm Reeves"), located at 18900 Sudebaker Road, Cerritos, California 90703, because the Vehicle was malfunctioning. Norm Reeves is and at all times relevant was a FORD factory authorized repair facility. Plaintiff complained that the coolant reservoir was going low while driving and that there was smoke seen coming from the rear exhaust. Norm Reeves diagnosed the Vehicle as having a cracked cylinder head and a scored wall at cylinder # 3. Plaintiff was advised that Plaintiff would have to pay to repairs relating to the cracked

cylinder head and the scored wall at cylinder # 3.

43.     The defects relating to the cylinder head and the scored cylinder wall at cylinder # 3 should have been covered under the high-priced California emissions warranty, because the cost to repair these defects far exceeded the high-priced threshold, and because the cylinder head and cylinder wall as located in the engine block are emissions related parts. Both of these defects cost far in excess of $1,000.00 to repair, which exceeds the high priced threshold for the Vehicle. The California Air Resources Board published a list of emissions related parts on June 1, 1990, which specifically stated that an engine cylinder head is an emissions related part. When a defective cylinder head causes leakage of coolant into the combustion chamber, the defect increases regulated emissions, causes a check engine light to illuminate, and will cause a vehicle to fail a smog test. Regarding a cylinder wall, when a cylinder wall is scored as indicated in the repair records relating to the Vehicle, the condition increases regulated emissions, causes a check engine light to illuminate and will cause a vehicle to fail a smog test.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

45.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of himself and members of the Class as defined below.

46.     Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

47.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

48.     The Class Vehicles are defined as all FORD vehicles ("Class Vehicles").

///

///

1    49.    Plaintiff's proposed classes consist of and are defined as follows:

All persons in California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective cylinder heads and cylinder walls that should have been covered under FORD's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Cylinder Head Class").

All persons in California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective cylinder heads and cylinder walls that should have been covered under FORD's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Cylinder wall Class").

All persons in California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts that should have been covered under FORD's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "High-Cost Class").

50.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

(a)    Whether FORD has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile California emissions warranty for parts that should have been identified by FORD as high-priced warranted parts pursuant to the CCR relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall.

(b)    Whether FORD has failed, and is failing, to identify for consumers and dealerships the all of the parts that should be identified as high-priced warranted parts, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall.

(c)    Whether FORD has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-

mile California High-Cost Emissions-Related Parts Warranty under the CCR relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall.

(d)     Whether FORD has failed, and is failing, to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that FORD spends on warranty-related repairs relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall.

(e)     Whether FORD's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall.

(f)     Whether FORD's conduct of failing to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall, that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in wrongfully minimizing the amount of money that FORD has to pay out in warranty claims.

(g)     Whether FORD's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether FORD has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to FORD's failure to identify all of the high-priced warranted

parts relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)  Whether Plaintiff and Class members are entitled to injunctive relief regarding FORD's failure to identify all of the high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)  The appropriate amount of restitution, or monetary penalties resulting from FORD's violations of California law.

(k)  Whether FORD has engaged in, and is engaging, in concealment pertaining to FORD's failure to identify all of the high-priced warranted parts relating to the Class Vehicles, including but not limited to coverage of the cylinder head and cylinder wall, that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

51.  Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

52.  Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all Class members since Plaintiff and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

53.  Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its

1   conclusion

2       54.     Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action

3   makes the use of class action adjudication superior to other methods. A class action will

4   achieve economies of time, effort, and expense as compared with separate lawsuits, and will

5   avoid inconsistent outcomes because the same issues can be adjudicated in the same manner

6   and at the same time for the entire class.

7       55.     Defendant keeps extensive computerized records of its customers. Defendant

8   has one or more databases through which a significant majority of Class members may be

9   identified and ascertained, and it maintains contact information, including email and home

10  mailing addresses, through which notice of this action could be disseminated in accordance

11  with due process requirements.

12      56.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R.

13  Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable

14  to Plaintiff and the Class, making appropriate both declaratory and injunctive relief with

15  respect to Plaintiff and the Class.

16                  **TOLLING OF THE STATUTE OF LIMITATIONS**

17      57.     FORD has actively engaged in misleading, and dishonest conduct relating to its

18  failure to properly identify all of the parts that should be covered under the 7-year 70,000-mile

19  California emissions warranty. FORD has engaged in said misleading, dishonest and wrongful

20  conduct both with regard to its representations to consumers and to CARB. Despite acting

21  diligently, Plaintiff and the Class cannot be reasonably expected on their own to learn or

22  discover what parts and repairs should be identified as high-priced and covered under the 7-

23  year 70,000-mile California emissions warranty. Therefore, the discovery rule is applicable to

24  the claims asserted by Plaintiff and members of the Class, and the statute of limitations for

25  bringing the claims set forth herein should be tolled.

26      58.     Specifically, Plaintiff has acted diligently by presenting the Vehicle to Norm

27  Reeves, a FORD factory authorized repair facility, for repairs. The issue of if the Class

28  Vehicles' cylinder head and cylinder wall should be covered under the high-priced California

emissions warranty is a highly technical issue which requires detailed and extensive engineering and automotive design knowledge. FORD and Norm Reeves possess this knowledge, but Plaintiff does not. Plaintiff acted diligently in presenting the Vehicle to Norm Reeves for repairs and relying on the representations by both Norm Reeves and by FORD, via the warranty booklet, that the cylinder head and cylinder wall were not covered. Plaintiff subsequently discovered that the cylinder head and cylinder wall should have been covered under the 7-year 70,000-mile warranty, and took action, and took action within the appropriate time period after discovery.

59.     FORD has actual and constructive knowledge that it is violating California law by failing to identify the cylinder head and cylinder wall, and other parts that should be designated as high-priced warranted parts, and by failing to provide a 7-year 70,000-mile California emissions warranty relating to said parts. FORD has concealed from Plaintiff and members of the Class that FORD is violating California law as set forth herein.

60.     Any applicable statute of limitation is tolled by FORD's knowledge, active concealment, and wrongful conduct set forth herein. FORD is further estopped from relying on any statute of limitation because of its concealment set forth herein.

**FIRST CLAIM FOR RELIEF**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

61.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

62.     California Business and Professions Code section 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." FORD has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

63.     The UCL imposes strict liability. Plaintiff need not prove that FORD intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

1      64.     FORD is a "person" as defined by Business & Professions Code § 17201.

2      65.     As a direct and proximate result of FORD's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**Unlawful Prong**

66.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

67.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

68.     FORD failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year 70,000-mile warranty coverage for all parts that should be designated by FORD as high priced emissions parts. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is FORD, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The warranty period shall be 7 years or 70,000 miles for high-priced warranted parts. 13 CCR 2037(b)(3). High-priced parts warranted parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). FORD has failed to provide 7 year 70,000 mile warranty coverage all parts that FORD should have designated as high priced emissions parts. The failure has resulted in damage to Plaintiff and members of the Class.

69.     Moreover, while Plaintiff does not yet know the specific information that FORD did or did not provide to CARB, on information and belief, FORD did not designate all of the parts as high-priced warranted parts that should be covered by the 7-year 70,000-mile

California High-Cost Emissions-Related Parts Warranty. Thereby, FORD also was able to avoid identifying all of the parts that FORD should have identified as high priced emissions parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high priced California emissions warranty for 7-year/70,000 mile California emissions warranty. Thus, FORD's violation of § 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), FORD was able to avoid disclosing in the warranty books all of the parts that should have been identified as high priced emissions parts, thus saving money by reducing warranty coverage claims.

70. FORD's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

**Unfair Prong**

71. FORD's conduct violates the unfair prong of the UCL.

72. An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. FORD's conduct violates all of these definitions.

73. As alleged above, FORD engages and has engaged in a systematic business practice of intentionally failing to identify in the FORD warranty book at the time of distribution, and in resources provided to its dealerships, numerous parts that FORD is obligated to identify as high-priced warranted parts by operation of law. FORD does this in an effort to reduce the amount of money that FORD spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If FORD complied with California law, then FORD dealerships would properly

provide warranty coverage for said high-priced warranted parts.

74.     Further, FORD's conduct is unfair because it intentionally refuses to provide warranty coverage for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year 70,000-mile California emissions warranty. Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of FORD's unfair business acts and practices as set forth in detail.

75.     FORD's failure to properly identify all parts as high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional business practice on the part of FORD to minimize the amount of money that FORD has to pay out in warranty claims. This conduct violates California law.

76.     As a direct and proximate result of FORD's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to pay for repairs that should have been covered under the 7-year 70,000-mile California emissions warranty. Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

77.     FORD's conduct does not benefit consumers or competition. Plaintiff and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. FORD's conduct only benefits FORD, by FORD wrongfully avoiding having to pay warranty claims which should be covered by the 7-year 70,000-mile California emissions warranty.

78.     The gravity of the consequences of FORD's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

79.     FORD's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

80.     To the extent that any definition of "unfair" requires a balancing test or

weighing various factors, such an inquiry is fact intensive and requires a full factual record as to FORD's justification and motives for its conduct, and as to the impact of FORD's conduct on Plaintiff and Class members.

81.     FORD's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

### Deceptive Prong

82.     Plaintiff's claim under this prong is predicated on omissions, not misrepresentations. While the warranty booklet for Class Vehicles claims to identify all of the parts covered under the 7-year 70,000-mile California emissions warranty, the warranty book omits parts that that should have been listed as covered by the high-priced emissions warranty.

83.     FORD engages in a uniform and systematic business practice of intentionally failing to identify in the FORD warranty book, and in resources provided to its dealerships, all of the parts that should be identified as high-priced warranted parts. FORD does this in an effort to intentionally conceal the identity of the parts which should be covered under the 7-year 70,000-mile California emissions warranty for high-priced emissions parts, to intentionally mislead consumers with regard to what parts are covered under the 7-year 70,000-mile California emissions warranty for high-priced parts, and to reduce the amount of money that FORD spends on warranty-related repairs. As warranted parts necessary for the operation of the vehicles, the parts that FORD failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation. If FORD complied with California law, and properly identified all parts as high-priced warranted parts which should be identified as such, then FORD dealerships would properly provide warranty coverage for said high-priced warranted parts.

84.     FORD's wrongful conduct is a systematic and intentional business practice on the part of FORD to minimize the amount of money that FORD has to pay out in warranty claims. This conduct violates California law.

85.     Said conduct is likely to deceive an ordinary consumer as FORD concealed this information from consumers and from FORD's dealerships, in an effort by FORD to minimize the amount of money that FORD has to pay out in warranty claims. One of the ways FORD misleads consumers relates to the information that FORD provides to consumers in the FORD warranty book. FORD intentionally omits information from the warranty book by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year 70,000-mile California emissions warranty.

86.     In evaluating the repair costs to be charged, Plaintiff justifiably relied on the information in the warranty booklet about parts that should be covered under the high-priced emissions warranty and was deceived and suffered damage as a result of FORD's intentional and wrongful conduct.

87.     FORD is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year 70,000-mile California emissions warranty because:

(1)     FORD is and was in a superior position to know the true state of facts about the duration of the 7-year 70,000-mile California emissions warranty and which parts should be covered as high-priced warranted parts;

(2)     FORD has made partial disclosures about the extent of the 7-year 70,000-mile California emissions warranty;

(3)     FORD has actively concealed and failed to identify all of the parts that are covered under the 7-year 70,000-mile California emissions warranty; and,

(4)     Members of the Class, including Plaintiff, have suffered actual loss due to FORD's concealment and false representations.

88.     The facts concealed and not disclosed by FORD to Plaintiff and members of the Class are material. Had Plaintiff and members of the Class known the true extent of the 7-year 70,000-mile California emissions warranty, and had FORD been truthful to its dealerships and members of the Class with regard to identifying all of the parts and repairs that are covered under the 7-year 70,000-mile California emissions warranty, Plaintiff and members of the

1  Class would have been able to avoid spending money in order to repair FORD vehicles sold

2  and leased in California. As a result, Plaintiff and members of the Class have suffered

3  damage.

4       89.     Furthermore, FORD has refused to, and continues to refuse to provide 7-year

5  70,000-mile California emissions warranty coverage relating to all repairs which should be

6  covered under said warranty pursuant to California law. This refusal is intentional, willful,

7  unfair, and unlawful.

8  **SECOND CLAIM FOR RELIEF**

9  **Violation of California Consumers Legal Remedies Act**

10  **(Cal. Civil Code §§ 1750 *et seq.*)**

11       90.     Plaintiff re-alleges and incorporates by reference each allegation set forth

12  above.

13       91.     FORD has violated Section 1770 of the California Consumers Legal Remedies

14  Act, Cal. Civ. Code Section 1750, et seq. (the "CLRA"). The violation results from FORD's

15  failure to keep its promise to the State of California, and members of the Class, including

16  Plaintiff, that it would honor the terms of the FORD warranty, and by doing so, that it would

17  honor the terms of the CCR. Furthermore, the FORD warranty booklet provided by FORD to

18  consumers, including Plaintiff, specifically references the California Emissions Warranty, and

19  both inferentially and specifically represents that it will honor the terms of the CCR, however

20  FORD has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

21       92.     Plaintiff is a consumer who was wrongfully required to pay for repairs which

22  should have been paid for by FORD pursuant to the CCR. The Vehicle was presented by

23  Plaintiff for repairs at a FORD authorized repair facility, in compliance with the terms and

24  conditions of the FORD warranty. The Vehicle required repairs which should have been

25  covered pursuant to the CCR, based upon the Vehicle's mileage and age. FORD wrongfully

26  failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set

27  forth herein. Thus, Plaintiff suffered damage.

28  ///

93.     FORD knows that it is violating the terms of the CCR, however FORD intentionally violates the CCR in order to save money. Plaintiff and members of the Class are generally unaware of the terms and scope of the CCR, thus FORD is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Class have suffered damage. FORD engages in a systemic pattern of denying warranty claims relating to Class Vehicles under the CCR relating to parts which are actually covered under the California Emissions Warranty for 7 years or 70,000 miles.

94.     Plaintiff and members of the Class have presented FORD vehicles to FORD authorized repair facilities for repairs that should have been covered under the CCR, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Class have thus suffered damage. Plaintiff brings this claim on behalf of herself and the Class.

95.     FORD's conduct in warranting, advertising, leasing, selling and distributing vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)     FORD represents and has represented that the Class Vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)     FORD has falsely represented that the Class Vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)     FORD advertised the Class Vehicles that have been sold and leased in the State of California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

96.     Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

97.     Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

98.     Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

99.     On December 13, 2021, FORD received notice via certified mail return receipt of FORD's violations of the CLRA, and that Plaintiff demanded that FORD provide a corrective remedy. On January 11, 2022, FORD's counsel sent Plaintiff's counsel correspondence indicating that FORD refused to provide a corrective remedy.

100.    Plaintiff is entitled to attorney fees pursuant to Civil Code section

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief and judgment against FORD as follows:

(a)     An order certifying the proposed Class designating Plaintiff as named representative of the Class, and designating the Plaintiff's Counsel as Class Counsel;

(b)     A declaration that FORD is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

(c)     An order enjoining FORD from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and the Class for the money wrongfully paid by Plaintiff and members of the Class relating to repairs which should have been covered by FORD under the 7-year 70,000-mile California emissions warranty;

(d)     An award to Plaintiff and members of the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)     An award to Plaintiff and members of the Class of any repair costs they are owed;

(f)     A declaration that FORD must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiff and members of the Class;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of attorneys' fees and costs pursuant to California Code of

Civil Procedure § 1021.5;

        (i)     An award of pre-judgment and post-judgment interest;

        (j)     Leave to amend the Complaint to conform to the evidence produced at trial; and

        (k)     Other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demand a trial by jury as to all claims so triable.

Dated: January 14, 2022               Respectfully submitted,

                              **THE LAW OFFICE OF ROBERT STARR**

                                  /S/

By: _____
                           Robert L. Starr
                           Attorney for Plaintiff